**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES** )<br>**AND EXCHANGE COMMISSION,** )<br> )<br> **Plaintiff,** )<br> )<br> **v.** )<br> )<br> **MICHEAL A. SKERRY,** )<br> )<br> **Defendant.** )<br>—————————————————) | Case No. 17-cv-00415 |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO MOTION TO DISMISS BY DEFENDANT MICHEAL A. SKERRY**

**SECURITIES AND EXCHANGE COMMISSION**
Michael Foster
Anne C. McKinley
Jedediah B. Forkner
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois 60604
(312) 353-7390

## **Table of Contents**

I. PRELIMINARY STATEMENT………………………………………………..…………1

II. BACKGROUND…………………………………………………………….………...2

      A. Skerry's Unlawful Promotion and Sale of Success Holding Stock…………..……….2

      B. The Commission's Claims for Relief……………………………………………4

III. ARGUMENT……………………………………………………………………6

      A. The one or three-year state of limitations invoked by Skerry is not
applicable to this enforcement action……………………………………………..7

      B. The Court has personal jurisdiction over Skerry………………………………8

      C. Venue is proper in the Northern District of Indiana…………………………9

      D. The case should remain in this District……………………………………11

IV. CONCLUSION……………………………………………………………16

## **Table of Authorities**

<u>**Cases**</u>

*Abbott v. Lockheed Martin Corp.*,
2007 WL 844903 (S.D.Ill. Mar. 20, 2007)…………………………………………14

*Artis v. Greenspan*,
223 F. Supp. 2d 149 (D.D.C. 2002)……………………………………………………9

*Bath Indus., Inc. v. Blot*,
427 F.2d 97 (7th Cir. 1970)………………………………………………………..10

*Boyd v. Snyder*,
44 F. Supp. 2d 966 (N.D.Ill. 1999)…………………………….………………..14

*Deb v. SIRVA, Inc.*,
832 F.3d 800 (7th Cir. 2016)……………………………………………………...9

*Dickerson v. Novartis Corp.*,
315 F.R.D. 18 (S.D.N.Y. 2016)…………………………………………………12

*Harrisburg v. Bradford Trust Co.*,
621 F. Supp. 463 (M.D. Pa. 1985)……………………………….………………10

*Hooper v. Mountain States Sec. Corp.*,
282 F.2d 195 (5th Cir. 1960)……………………………………………………10

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945)………………………………………………………………8

*KM Enterprises, Inc. v. Global Traffic Tech., Inc.*,
725 F.3d 718 (7th Cir. 2016)……………………………………………….....8

*Kokesh v. SEC*,
137 S. Ct. 1635 (2017)………………………………….………………………8

*Medical Mutual of Ohio v. deSoto*,
245 F.3d 561 (6th Cir. 2001)……………………………………………………...8

*In re National Presto Indus., Inc.*,
347 F.3d 662 (7th Cir. 2003)…………………………………………………15

*Pendleton v. Mukasey*,
   552 F. Supp. 2d 14 (D.D.C. 2008)……………………………………………………..9

*Renchard v. Prince William Marine Sales, Inc.*,
   28 F.Supp.3d 1 (D.D.C. 2014)……………………………………………………..14

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010)……………………………………………………..12

*SEC v. Capital Gains Research Bureau, Inc.*,
   375 U.S. 180 (1963)………………………………………………………………..5

*SEC v. Collyard*,
   861 F.3d 760 (8th Cir. 2017)……………………………………………………..8

*SEC v. Corporate Relations Group, Inc.*,
   2003 WL 25570113 (M.D. Fla. Mar. 28, 2003)…………………………………..5

*SEC v. Daly*,
   2006 WL 6190699 (D.D.C. Feb. 11, 2006)………………………………...……12

*SEC v. Diversified Corporate Consulting Group*,
   378 F.3d 1219 (11th Cir. 2004)………………………………...………………..7

*SEC v. Diversified Indus., Inc.*,
   465 F. Supp. 104 (D.D.C. 1979)………………………………………………..10

*SEC v. e-Smart Techs., Inc.*,
   926 F. Supp. 2d 231 (D.D.C. 2013)……………………………...……………9, 10

*SEC v. Electronics Warehouse, Inc.*,
   689 F. Supp. 53 (D. Conn. 1988)……………………………...……………13, 14, 15

*SEC v. Park*,
   99 F. Supp. 2d 889 (N.D. Ill. 2000)……………………………………………..5

*SEC v. Randy*,
   38 F. Supp. 2d 657 (N.D. Ill. 1999)……………………………………………..6

*SEC v. Rose Fund, LLC*,
   2004 WL 2445242 (N.D. Cal. Jan. 9, 2004)……………………………………..13

*SEC v. Savoy Indus., Inc.*,
   587 F.2d 1149 (D.C.Cir. 1978)……………………………………………………..13

*SEC v. Spencer Pharm., Inc.*,
 57 F. Supp. 3d 127 (D.Mass. 2014)………………………………………………8

*Securities Investor Protection Corp. v. Vigman*,
 764 F.2d 1309 (9th Cir. 1985)……………………………………………...……10

*Stewart Organization, Inc. v. Ricoh Corp.*,
 487 U.S. 22 (1988)………………………………………………………………11

*Systemation, Inc. v. Engel Indus., Inc.,*
 992 F. Supp. 58 (D. Mass. 1997)…………………………………………...……14

*United Liberty Life Ins. Co. v. Ryan*,
 985 F.2d 1320 (6th Cir. 1993)……………………………………………………8

*Zorn v. Anderson*,
 263 F. Supp 745 (S.D.N.Y. 1966)………………………….……………………10

*Zweig v. Hearst Corp.*,
 594 F.2d 1261 (9th Cir. 1979)……………………...……………………………5

## **Statutes**

Section 5 of the Securities Act of 1933
 15 U.S.C. § 77e………………………………………………………………...6

Section 13 of the Securities Act of 1933
 15 U.S.C. §77m…………………………………………………….……..7

Section 17(a) of the Securities Act of 1933
 15 U.S.C. § 77q(a)…………………………………………………………...4

Section 22 of the Securities Act of 1933
 15 U.S.C. § 77v……………………………………………………………9

Section 10(b) of the Securities Exchange Act of 1934
 15 U.S.C. § 78j(b)…………………………………………………………4

Section 27 of the Securities Exchange Act of 1934
 15 U.S.C. § 78aa…………………………………………………….8, 9

28 U.S.C. § 1404(a)………………………………………………………...11

28 U.S.C. § 2462……………………………………….…………………………………7

**<u>Rules</u>**

Securities Exchange Act of 1934 Rule 10b-5
        17 C.F.R. § 240.10b-5……………………………………………………………4

Plaintiff U.S. Securities and Exchange Commission (the "Commission"), in response to the motion to dismiss or transfer venue filed by Defendant Micheal A. Skerry ("Skerry"), submits the accompanying Declaration of Wilburn Saylor ("Saylor Dec.") and states as follows:

## I. PRELIMINARY STATEMENT

On September 28, 2017, the Commission filed a Complaint in this matter alleging that Skerry carried out a fraudulent investment scheme to "scalp" the stock of Success Holding Group International, Inc. ("Success Holding") in violation of federal securities law.  On October 30, 2017, Skerry emailed the Commission a copy of his Motion to Dismiss or in the Alternative to Transfer the Case ("Motion").[1]   In this responsive filing, Skerry, a resident of British Columbia, Canada, argues that the Commission was required to bring this case sooner than it did and, in any event, he is beyond the reach of the applicable federal securities laws and this Court. Alternatively, Skerry maintains that his forum choice, the Western District of Washington, should be substituted for the Commission's.

None of Skerry's arguments have merit.  The statute of limitations provisions identified by Skerry do not apply to enforcement actions brought by the Commission and instead relate solely to actions by private plaintiffs.  Moreover, this Court has personal jurisdiction over Skerry as a result of his myriad contacts with the United States and venue is proper because several acts in furtherance of Skerry's fraudulent scheme occurred within the Northern District of Indiana. Among other things, Skerry entered into a contract with Success Holding, which maintains its principal and only United States office in the District, and Skerry communicated on numerous

---

[1]  In the "Proof of Service" accompanying the Motion, Skerry states that he served the Commission's attorneys by email on October 27, 2017. This is incorrect.  A copy of Skerry's service email, which was actually sent on <u>October 30, 2017</u> at 6:31 pm CT, is attached hereto as Exhibit A.

occasions with Success Holding's President and Chief Financial Officer, who resides in the District.  Finally, Skerry's alternative request to transfer venue is entirely unsupported.  Skerry has not set forth any facts showing that venue is proper in the Western District of Washington, he has not identified any witnesses for whom that district would be more convenient, and he has not otherwise demonstrated that transferring the case would serve the interest of justice.  As a result, Skerry's Motion should be denied.

## II. BACKGROUND

### A.      Skerry's Unlawful Promotion and Sale of Success Holding Stock

Success Holding is a Nevada corporation with its principal and only United States office in Fort Wayne, Indiana. *Cmplt.* at ¶ 8; Saylor Dec. Ex. 5 at 1 and Ex. 1, Kistler Tr. at 45-46.  In May 2014, Brian Kistler ("Kistler"), Steven Chen ("Chen"), Taihwa Terry Ho ("Ho") and others met with Skerry in Asia to discuss the company's business plans. Saylor Dec. Ex. 1, Kistler Tr. at 105, 115-116.  Kistler resides within the Northern District of Indiana in Ossian, Indiana. *Id.* at 15-16 and Kistler Tr. Ex. 16.  At all relevant times, Kistler served as Success Holding's President and Chief Financial Officer and worked out of Success Holding's offices in Fort Wayne, Indiana. *Id.* at 43-44.  Kistler was the only Success Holding employee who was located in the United States during 2014, the time of the relevant conduct. *Id.* at 45-46.  Chen, Success Holding's Chairman of the Board of Directors, resides in Asia. Saylor Dec. ¶ 8 and Ex. 5 at 7.  Ho, who was a consultant to Success Holding, resides in Fresh Meadows, New York. Saylor Dec. Ex. 3, Ho Tr. at 12-13, 22 and Ho Tr. Ex. 60. Kistler, Chen and Ho likely will be witnesses in this case.

Following the meeting in May 2014, Skerry entered into agreements with Success Holding and its principals to provide investor relations services and purchase shares of Success

2

Holding stock at a discount. *Cmplt.* at ¶¶ 2, 11-12.  In June 2014, Skerry paid $36,000 to Success Holding in exchange for 360,000 shares of Success Holding stock. *Id.* at ¶¶ 2, 13.  He paid the money to Success Holding through an attorney, Diane Dalmy ("Dalmy"). Saylor Dec. Ex. 3, Ho Tr. at 63-64 and Ho Tr. Ex. 65.  Dalmy, who also may be a witness in this matter, resides in Colorado. *See, e.g., In the Matter of Diane Dalmy, Esq.*, Initial Dec. Rel. No. 1042, at 2 (July 29, 2016), available at https://www.sec.gov/alj/aljdec/2016/id1042bpm.pdf.

After acquiring the shares of Success Holding stock, Skerry immediately began taking steps to generate interest in the company and drive up public demand for Success Holding stock. *Cmplt.* at ¶¶ 2, 15.  Among other things, Skerry posted misleading messages on public websites, sent blast emails to potential investors urging them to buy Success Holding stock, and worked with Success Holding to issue press releases. *Id.* at ¶¶ 2, 15-19.  Skerry recommended topics to include in the press releases, edited the press releases drafted by Success Holding employees, and worked with vendors to have the press releases distributed to the public. *Id.* at ¶ 16.  The press releases were available on public websites, including websites operated by OTC Markets (www.otcmarkets.com) and Success Holding (www.successholding.com). Saylor Dec. ¶ 11. Emails and other documents indicate that Skerry discussed at least some of the press releases with Kistler. Saylor Dec. Ex. 4.  For example, on August 22, 2014, Skerry sent a draft press release to Kistler and others, stating in part: "these are the types of news releases people in North America want to see…[w]e would like to issue this on Monday as the email campaign is commencing on Sunday night." *Id.*  Skerry also hired a stock promoter, Mark Behringer ("Behringer"), to assist him in recommending Success Holding stock to more potential investors. *Cmplt.* at ¶ 19; Saylor Dec. Ex. 2 at 36-37.  Behringer, who likely will be a witness in this case,

resides in Penfield, New York. Saylor Dec. Ex. 2, Behringer Tr. at 14, 67-68 and Behringer Tr. Ex. 80. Skerry did not disclose to any of the investors that he planned to sell his shares contrary to his recommendations that they purchase Success Holding stock. *Cmplt.* at ¶ 15.

From July 2014 to December 2014, Skerry sold all of the Success Holding shares he bought in June 2014 to the investing public for a profit of over $950,000. *Id.* at ¶ 20. During that period, investors in at least twenty different states bought shares of Success Holding stock. Saylor Dec. at ¶ 12. Skerry's sales made up more than 60% of the trading volume during the period, including 100% of the trading volume on certain days. *Complt.* at ¶ 20. Not a single share of Success Holding stock had publicly traded before Skerry's first sale in July 2014. *Id.* Skerry's efforts to promote Success Holding and its stock dramatically increased Success Holding's share price. *Id.* The price of Success Holding stock rose from $1.00 per share at the time of Skerry's first sale to $10.25 per share on December 31, 2014. *Id.*

Success Holding's stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act (15 U.S.C. § 78l(g)) and was quoted on OTC Link under the symbol SHGT. *Id.* at ¶ 8. No registration statement was filed with the Securities and Exchange Commission in connection with Skerry's sales of Success Holding stock to the public. *Id.* at ¶ 22.

### B.     The Commission's Claims for Relief

The Commission alleges that Skerry carried out a fraudulent scheme to "scalp" the stock of Success Holding in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)) and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5). Courts have held that the practice of "scalping" – recommending the purchase of a stock and then selling the stock

4

without disclosing the intent to sell – constitutes fraud or deceit. *See*, *e.g.*, *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 181 (1963); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1268 (9th Cir. 1979). A person who intends to engage in scalping assumes a duty to disclose his interest in the targeted stock. *SEC v. Park*, 99 F. Supp. 2d 889, 899 (N.D. Ill. 2000). Failing to disclose one's intent to sell in contravention of one's advice to others (to buy) constitutes a material omission. *See*, *e.g.*, *Zweig*, 594 F.2d at 1266-68. Courts have found scalping to violate the antifraud provisions of the federal securities laws in many different contexts. *See*, *e.g.*, *Capital Gains Research Bureau*, 375 U.S. at 181 (investment adviser who recommended stocks to clients for long-term investment then immediately sold the same stocks without disclosing intent to sell); *Zweig*, 594 F.2d at 1268 (newspaper columnist who recommended stock in an article then sold the same stock without disclosing intent to sell); *SEC v. Corporate Relations Group, Inc.*, 2003 WL 25570113, at *8 (M.D. Fla. Mar. 28, 2003) (stock promoters sold the stocks that they recommended in a newsletter without disclosing their intent to sell); *Park*, 99 F. Supp. 2d at 899 (individual who touted stocks on a website and then sold the same stocks without disclosing intent to sell).

In this case, Skerry generated demand for Success Holding stock by working with the company to issue numerous press releases, posting statements praising Success Holding and its stock on a public website, sending blast emails directly to investors recommending the stock, and hiring a stock promoter in the United States to recommend the stock to more investors. Skerry did not disclose to any of the investors that he planned to sell his shares of Success Holding stock contrary to his recommendations to buy the stock.

The Commission also alleges that Skerry sold securities in an unregistered transaction in violation of Section 5 of the Securities Act (15 U.S.C. § 77e).  Absent an exemption from registration, Section 5(a) of the Securities Act makes it unlawful for any person to use any means or instruments of transportation or communication in interstate commerce or of the mails to sell a security for which a registration statement is not in effect.  Similarly, Section 5(c) makes it unlawful to offer for sale a security for which a registration statement has not been filed with the Commission.  A prima facie case for a violation of Section 5 is established by showing that:  (1) the defendants sold or offered to sell securities; (2) no registration statement covered the securities; and (3) the sale or offer was made through the use of interstate facilities or mails.  *See SEC v. Randy*, 38 F. Supp. 2d 657, 667 (N.D. Ill. 1999).

Skerry bought shares of Success Holding stock directly from the company and then sold the shares to the public, resulting in a public distribution.  No registration statement was filed with the Commission in connection with the sales.  Skerry made use of interstate facilities in the form of, among other things, emails, wire transfers and brokerage transactions to offer and sell the securities.

As redress for the alleged securities law violations, the Commission seeks permanent injunctive relief against future violations, disgorgement of Skerry's ill-gotten gains, civil penalties, and a penny stock bar. *Cmplt.* at 10-11.

### III. ARGUMENT

In his Motion, Skerry hurls several misplaced attacks against the Commission's case. First, he erroneously relies on a statute of limitations provision that applies only to private rights of action to claim that the Commission's case was not timely filed.  Second, despite his many

deliberate contacts with the United States, Skerry appears to challenge personal jurisdiction by claiming that "[t]here is nothing in the laws which would make me personally liable under US Securities Laws." (Motion at 2)  Next, Skerry challenges venue by asserting that no material acts occurred in this District even though his scheme involved entering into a contract with Success Holding, whose only United States office is located in this District, buying and selling Success Holding's stock, and communicating with Success Holding's President and Chief Financial Officer, who resides in this District. Finally, Skerry seeks to transfer this case to the Western District of Washington for his own convenience and the supposed convenience of some unidentified witnesses.  As explained below, all of Skerry's arguments fail, and his Motion to should be denied.

**A.     The one or three-year statute of limitations invoked by Skerry is not applicable to this enforcement action.**

Citing to Section 13 of the Securities Act, 15 U.S.C. §77m, Skerry claims that the applicable statute of limitations is one year after the discovery of the alleged untrue statement or omission or, at most, three years after the subject security was offered or sold to the public. (*See* Motion at 8.)  The one and three year time bars, however, apply solely to private right of actions under Sections 11, 12(a)(1), and 12(a)(2) of the Securities Act and not to civil enforcement actions brought by the Commission.  *SEC v. Diversified Corporate Consulting Group*, 378 F.3d 1219, 1224 (11th Cir. 2004).  Therefore, the statute of limitations under Section 13 does not apply to this case.  The Commission brought this action—to redress misconduct that occurred in 2014—well within any applicable statute of limitations. *See* 28 U.S.C. § 2462 (providing that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when

the claim first accrued"); *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017) (holding that section 2462, applicable to claims for civil penalties, is also applicable to Commission claims for disgorgement); *see also SEC v. Collyard*, 861 F.3d 760, 764 (8th Cir. 2017) (permanent injunction imposed by district court against future securities law violations was not precluded by five year statute of limitations).

> **B.      The Court has personal jurisdiction over Skerry.**

A court may exercise personal jurisdiction over a defendant when the defendant has had sufficient "minimum contacts…, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). When a statute provides for nationwide service of process, the minimum contacts necessary to satisfy constitutional due process requirements are analyzed based on the defendant's contacts with the United States, not a particular state or district. *KM Enterprises, Inc. v. Global Traffic Tech., Inc.*, 725 F.3d 718, 724 (7th Cir. 2016); *Medical Mutual of Ohio v. deSoto*, 245 F.3d 561, 567-68 (6th Cir. 2001).  Section 27 of the Exchange Act provides that "process…may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." 15 U.S.C. § 78aa.  Thus, "Section 27 confers personal jurisdiction… over any defendant with minimum contact to the United States." *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993); *see also SEC v. Spencer Pharm., Inc.*, 57 F. Supp. 3d 127, 134-37 (D.Mass. 2014) (finding personal jurisdiction over a Canadian national).

This Court has personal jurisdiction over Skerry because of his numerous contacts with the United States:  he entered into a contract with a company whose principal office is located in the United States and had its common stock registered with the Commission; he bought and sold

stock of the company using securities markets located in the United States, he engaged in numerous communications with investors and others located in the United States, and he hired a stock promoter located in the United States to assist him in marketing the company to more investors located in the United States.  Through these actions, Skerry chose to avail himself of the United States and its laws and cannot now claim that personal jurisdiction is improper.

### C.    Venue is proper in the Northern District of Indiana.

When a defendant challenges venue, the court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008); *see also Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) ("the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits").  The court also may consider material outside of the pleadings. *See Deb*, 832 F.3d at 809; *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).  While the plaintiff bears the burden of establishing that venue is proper, the defendant must present facts that will defeat the plaintiff's assertion of venue in order to prevail on a motion to dismiss. *SEC v. e-Smart Techs., Inc.*, 926 F. Supp. 2d 231, 235 (D.D.C. 2013).

For enforcement actions brought under the federal securities laws, the applicable venue provisions are Section 22 of the Securities Act (15 U.S.C. § 77v) and Section 27 of the Exchange Act (15 U.S.C. §78aa).  Under both the Exchange Act and the Securities Act, venue is proper "in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. §§ 78aa, 77v(a).  Additionally, venue is proper under the Securities Act "in the district where the

offer or sale took place, if the defendant participated therein" and under the Exchange Act "in the district wherein any act or transaction constituting the violation occurred." *Id.*  If venue is proper under either the Securities Act or the Exchange Act, pendent venue may be applied to the other claims in the discretion of the court based on factors such as judicial economy, convenience, avoidance of piecemeal litigation and fairness to the parties.  *e-Smart Techs.*, 926 F. Supp. 2d at 237; *Zorn v. Anderson*, 263 F. Supp 745, 747 (S.D.N.Y. 1966).

An act or transaction "constitutes" a securities law violation for venue purposes under the Exchange Act if it "represents more than an immaterial part of the allegedly illegal events." *SEC v. Diversified Indus., Inc.*, 465 F. Supp. 104, 111 (D.D.C. 1979); *Bath Indus., Inc. v. Blot*, 427 F.2d 97, 114 (7th Cir. 1970).  "The act contemplated by the statute need not be crucial, nor must the fraudulent scheme be hatched in the forum district." *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (internal quotes and citations omitted).  Any use of the mails or other interstate facilities made in furtherance of the scheme from within the forum district may qualify as an act or transaction constituting the violation. *See*, *e.g.*, *Hooper v. Mountain States Sec. Corp.,* 282 F.2d 195, 204 (5th Cir. 1960); *Harrisburg v. Bradford Trust Co.,* 621 F. Supp. 463, 468 (M.D. Pa. 1985).

Skerry used Success Holding as the vehicle for carrying out his fraudulent scheme. Skerry entered into a contract with Success Holding to provide investor relations services, acquired a large amount of Success Holding's stock through an agreement with the company's principals, recommended the stock to potential investors located across the United States and elsewhere, and then sold the shares to the public for a substantial profit without disclosing his intent to sell the very shares he was recommending to others.

Numerous acts in furtherance of this scheme occurred within the Northern District of Indiana. Success Holding's principal office is located in Fort Wayne, Indiana at a site that is less than six miles from this Court. Success Holding has no other offices in the United States. The individual who served as Success Holding's President and Chief Financial Officer during the relevant time period, Kistler, resides in the Northern District of Indiana. Kistler was the only individual working for Success Holding in the United States during the relevant time, and he had substantial communications with Skerry. As a result, Kistler is expected to be a material witness in this litigation. Among other things, Skerry and Kistler discussed the content of press releases that would be issued by Success Holding. The press releases were one of the means through which Skerry sought to increase demand for Success Holding's shares in furtherance of his fraudulent scheme.

Accordingly, venue lies in this District and Skerry's Rule 12(b)(3) motion to dismiss should be denied.

### D.      The case should remain in this District.

Requests for a transfer of venue are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district to which all parties have consented." This section "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

Courts determining whether to transfer a case under Section 1404(a) undertake a two part analysis. *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 26 (S.D.N.Y. 2016).  First, the court must decide if the action to be transferred could have been brought in the transferee court. *Id.*  Second, if venue is proper in the alternate forum, the court must consider whether a transfer is in the interest of justice and convenience of the parties and witnesses. The defendant "bears the burden of establishing that transfer is proper." *SEC v. Daly*, 2006 WL 6190699, at *3 (D.D.C. Feb. 11, 2006).

Here, Skerry requests that this case be transferred to the Western District of Washington, but he has failed to make the threshold showing that it is an appropriate venue.  Skerry does not reside in the Western District of Washington, he has not put forth evidence that he transacts business in that district, and he has not identified any relevant conduct occurring within that district.  Thus, this Court need not go any further in its analysis and should deny the requested transfer.

Even if Skerry were able to demonstrate that venue properly lies in the Western District of Washington, the Court should still deny a transfer, under the second part of the Section 1404(a) analysis, considering the convenience of the parties and witnesses and the interest of justice. *Dickerson*, 315 F.R.D. at 26.  With respect to convenience, courts generally consider factors such as the availability of and access to witnesses, each party's access to and distance from resources in each forum, the location of material events, and the relative ease of access to sources of proof. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).  Other factors relevant to the interest of justice include docket congestion

and likely speed to trial, each court's relative familiarity with the relevant law and the relationship of each community to the controversy. *Id.*

Skerry has not shown, as he must, that these factors weigh heavily in favor of a transfer. The special venue statute in Section 27 of the Exchange Act "represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue." *SEC v. Electronics Warehouse, Inc.*, 689 F. Supp. 53, 74 (D. Conn. 1988). "Thus, plaintiff's choice of [forum] is entitled to substantial weight and will not be displaced without a clear-cut showing that factors of convenience and the interests of justice favor trial in [another district]." *Id.* The Commission elected to bring this case in the Northern District of Indiana for a number of reasons, including its central location amongst the many districts in which conduct took place and witnesses reside, its interest in adjudicating the case given Success Holding's office in the District, and its proximity to the Commission's Chicago Regional Office. The Commission's choice is entitled to deference. *SEC v. Rose Fund, LLC*, 2004 WL 2445242, at *2 (N.D. Cal. Jan. 9, 2004) ("The SEC…is entitled to just as much deference in its choice of forum as any other litigant"); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154-55 (D.C. Cir. 1978) (affirming district court's refusal to transfer a Commission enforcement action).

This is a case involving conduct and witnesses that span the globe. There is no singular forum that could provide convenience to the parties and all of the material witnesses. The witnesses that the Commission anticipates having material information include Skerry (Canada), Kistler (Indiana), Ho (New York), Behringer (New York), Dalmy (Colorado), Chen (Asia) and other employees of Success Holding (Asia). The Northern District of Indiana is home to Kistler

and Success Holding's only office in the United States.  It also provides a central location with convenient access for the parties and other witnesses.  Skerry claims that the Western District of Washington would be more convenient for witnesses, but he fails to identify any of those witnesses or provide any explanation as to why the Western District of Washington would be more convenient for them.  Without more information, this argument fails to add any weight to Skerry's Motion. *See Systemation, Inc. v. Engel Indus., Inc.,* 992 F. Supp. 58, 63 (D. Mass. 1997) ("A defendant's general allegations as to the location of books and records and the inconvenience to witnesses is not sufficient; more precise allegations are required."); *Electronics Warehouse,* 689 F. Supp. at 75 (where moving party fails to specify what helpful testimony witnesses would provide, court cannot properly assess need for their testimony).  Furthermore, the "convenience of the witnesses weighs heavily only to the extent that the witnesses may actually be unavailable for trial in one forum." *Abbott v. Lockheed Martin Corp.*, 2007 WL 844903, at *3 (S.D. Ill. Mar. 20, 2007) (citing *Heller Financial Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)).  A showing of unavailability is required because "it is axiomatic that 'mere inconvenience to the witnesses alone is not enough to warrant transfer.'" *Renchard v. Prince William Marine Sales, Inc.*, 28 F.Supp.3d 1, 12 (D.D.C. 2014) (citation omitted).

Skerry's primary reason for requesting a transfer appears to be for his own convenience.  However, "defendants must demonstrate that a transfer will promote the efficient administration of justice; they may not simply shift the inconvenience from one party to another." *Boyd v. Snyder*, 44 F. Supp. 2d 966, 969 (N.D. Ill. 1999).  In addressing this point in another Commission case, the Seventh Circuit explained:

> When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff…We think this principle should hold even when one of the parties is a federal agency that will suffer inconvenience if forced to litigate in the defendant's district because the agency or its field office is in another district.

*In re National Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003).

Skerry suggests that the Commission has an office near the Western District of Washington which would make litigating this case there convenient for both parties.  But the Commission's closest office is located in San Francisco, California, more than 800 miles from the courthouse in Seattle, Washington.  Additionally, this case was investigated by and will be litigated by Commission staff in the Chicago Regional Office, and the Commission's files related to this case are held there. Saylor Dec. ¶ 3.  The Northern District of Indiana is a far more convenient venue for the Commission.  The mere fact that the Commission has an office on the West Coast closer to where Skerry resides does not justify a transfer to the district of Skerry's choosing.  *See Electronics Warehouse*, 689 F. Supp. at 75 (where case was investigated and litigated by Commission employees in Boston and the Commission's files and documents were maintained in Boston, inconvenience to Commission staff weighed in favor of denying transfer to Miami).

Moreover, the Northern District of Indiana has an interest in adjudicating this case because of Success Holding's presence within the District.  Skerry used Success Holding's stock to carry out a fraudulent scheme that resulted in Skerry making nearly a million dollars at the expense of ordinary investors.  Skerry did not identify any factors related to the interest of justice that weigh in favor of transferring this action to the Western District of Washington.

15

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff U.S. Securities and Exchange Commission respectfully requests that Defendant Micheal A. Skerry's Motion to Dismiss or in the Alternative to Transfer the Case be denied.

November 13, 2017

By:    s/ Jedediah B. Forkner      
Michael Foster (FosterMi@sec.gov)
Anne C. McKinley (McKinleyA@sec.gov)
Jedediah B. Forkner (ForknerJ@sec.gov)
U.S. Securities and Exchange Commission
Chicago Regional Office
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois 60604
(312) 353-7390

*Attorneys for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2017 the foregoing document was filed with the Clerk of the Court using the ECF system.  In addition, I caused a copy of the foregoing document to be served upon the following individuals by email and overnight delivery:

Micheal A. Skerry
422 Rousseau St.
New Westminster, BC V3L 3R3
Canada
maskerry@shaw.ca

*Pro se*

s/ Jedediah B. Forkner
Jedediah B. Forkner