UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES SECURITIES AND | ) | |
|---|---|---|
| EXCHANGE COMMISSION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NUMBER: 1:17 CV 415 |
| | ) | |
| MICHAEL A. SKERRY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

The United States Securities and Exchange Commission ("the SEC) sued Michael A. Skerry ("Skerry"), a Canadian resident, for violations of various United States securities laws with respect to his sale of securities in Success Holding Group International, Inc. ("Success Holding"). Skerry, proceeding *pro se*, filed the present "Motion to Dismiss or, in the Alternative, to Transfer the Case" pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3)[1] [DE 4] asserting improper venue, that the events occurred outside the statute of limitations period and, regardless of the limitations period, he is beyond the reach of the applicable securities laws and this Court. Alternatively, Skerry seeks transfer to the Western District of Washington under the doctrine of forum non conveniens. For the following reasons, Skerry's motion will be DENIED.

---

[1] Skerry's Motion only references Fed.R.Civ.P. 12(b)(3), however his Motion contains statements which, when liberally construed as we are required to do in the case of *pro se* parties, indicate that he is also challenging this Court's personal jurisdiction over him. For this reason, both issues are addressed in this Opinion and Order.

1

## FACTUAL BACKGROUND[2]

On September 28, 2017, the SEC filed its Complaint against Skerry alleging that he carried out a fraudulent investment scheme to "scalp" the stock of Success Holding in violation of federal securities law. Success Holding is a Nevada corporation with its principal place of business (and only physical office) in Fort Wayne, Indiana. Skerry, as noted above, is a Canadian resident.

In May 2014, Brian Kistler ("Kistler"), a resident of Ossian, Indiana within the Northern District of Indiana, Steven Chen ("Chen"), Taihwa Terry Ho ("Ho"), and others met with Skerry in Asia to discuss the company's business plans. Kistler served as Success Holding's President and Chief Financial Officer and worked out of Success Holding's Fort Wayne, Indiana office. He was the only Success Holding employee located in the United States during 2014, the time of the relevant conduct. Chen, the Chairman of the Board, resides in Asia. Ho, a Success Holding consultant, resides in Fresh Meadow, NY.

Following the May 2014 meeting, Skerry entered into agreements with Success Holding to provide investor relations services and purchase shares of Success Holding stock at a discount. In June 2014, Skerry paid $36,000 to Success Holding in exchange for $360,000 shares of Success Holding stock. These funds were provided to Success Holding through Skerry's attorney, Diane Dalmey ("Dalmey"), a resident of Colorado. Kistler, Chen, Ho, and Dalmy are all anticipated witnesses in this case.

---

[2] These facts are taken from the Complaint and documents outside the pleadings which are attached to the SEC's response to Skerry's motion. See *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (on a Rule 12(b)(2) motion to dismiss, the Court may "receive and weigh" affidavits and other evidence outside the pleadings); *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 808 (7th Cir. 2011) (when ruling on a motion to dismiss of improper venue under Rule 12(b)(3), the Court may look to evidence outside the pleadings). Moreover, on a motion to dismiss for improper venue, the court construes all facts and draws reasonable inferences in favor of the plaintiff. *Id.* at 806.

After acquiring the shares of Success Holding, Skerry is alleged to have taken steps to generate interest in the company and drive up public demand for the stock. Complaint at ¶¶2, 15. Skerry posted misleading messages on public websites, sent emails to potential investors urging them to buy Success Holding stock and worked with Success Holding to issue press releases. Skerry recommended topics to include in the press releases, edited the press releases drafted by Success Holding employees, and worked with vendors to have the press releases distributed to the public. The press releases were available on public websites, including websites operated by OTC Markets and Success Holding. Emails and other documents indicate that Skerry discussed at least some of the press releases with Kistler.

On August 22, 2014, Skerry sent a draft press release to Kistler and others, stating in part: "these are the types of news releases people in North America want to see … [w]e would like to issue this on Monday as the email campaign is commencing on Sunday night." Skerry also hired a stock promoter, Mark Behringer ("Behringer"), to assist him in recommending Success Holding stock to more potential investors. Behringer resides in New York and is likely to be called as a witness. At no time, did Skerry disclose to any of the investors that he planned to sell his shares contrary to his recommendations that they purchase Success Holding stock.

From July 2014 to December 2014, Skerry sold all of the Success Holding shares he bought in June 2014 to the investing public for a profit of over $950,000. During this time, investors in at least 20 different states bought shares of Success Holding stock. Skerry's sales made up more than 60% of the trading volume during the period, including 100% of the trading volume on certain days. Not a single share of Success Holding stock had publicly traded before Skerry's first sale in July 2014. Skerry's efforts to promote Success Holding and its stock dramatically increased

Success Holding's share price. The price of Success Holding stock rose from $1.00 per share at the time of Skerry's first sale to $10.25 per share on December 31, 2014.

Success Holding's stock was registered with the SEC pursuant to Section 12(g) of the Exchange Act and was quoted on OTC Link under the symbol SHGT. No registration statement was filed with the SEC in connection with Skerry's sales of Success Holding to the public.

## DISCUSSION

The Complaint alleges that Skerry carried out a fraudulent scheme to "scalp" the stock of Success Holding in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. 77q(a)) and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder (17 C.F.R. 240.10b-5). The crux of this allegation is that "Skerry generated demand for the Success Holding stock by working with the company to issue press releases, posting statements praising Success Holding and its stock on a public website, sending blast emails directly to investors recommending the stock, and hiring a stock promoter in the United States to recommend the stock to more investors." According to the Complaint, Skerry did not disclose to any of the investors, his plan to sell his shares of Success Holding stock. Additionally, the Complaint asserts that Skerry sold securities in an unregistered transaction (and without an exemption from registration) in violation of Section 5 of the Securities Act.

In his Motion, Skerry denies all the above allegations and seeks dismissal of the case asserting that the SEC brought the case outside the applicable statute of limitations and, even if the case is brought within the limitations period, "there is nothing in the laws which would make me personally liable under US Securities Laws." (Motion, p. 2). Skerry further asserts that venue is improper in this District. Each of these issues are addressed below.

### A. Limitations Period

Starting first with the applicable statute of limitations, Skerry asserts that the SEC should have brought this action sooner (within one or three years), under 15 U.S.C. §77m. That provision states:

> No action shall be maintained to enforce any liability created under section 77k or 77*l*(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(a)(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(a)(2) of this title more than three years after the sale.

However, this limitations provision applies only to private enforcement actions for incorrect statements and material omissions in the course of selling securities. *See* 15 U.S.C. §77*l*(a) (providing private right of action for violations of 77e and material omissions or material untrue facts in a written or oral communication); 15 U.S.C. §77k (private action for false or misleading registration statements). It does not apply to actions brought by the SEC under its civil enforcement authority.

Indeed, as the SEC points out, its authority to bring suit derives from 28 U.S.C. §2462 which provides "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued…" Given this provision, the present action which alleges acts that accrued in 2014, is well within the limitations period.

### B. Personal Jurisdiction

Although it is not clearly articulated, it appears that Skerry is also asserting the absence of personal jurisdiction over him since he is a Canadian citizen, "[t]he people I dealt with in selling his shares of stock were Canadian, … and the alleged news releases were all done by the company." (Motion, p. 2). He further indicates that "does not reside in this District. He did not transact any business in this jurisdiction. He did not offer to sell stock in this [j]urisdiction. And he did not sell any stock in this jurisdiction."

A federal court has personal jurisdiction over non-consenting, nonresident defendants to the extent authorized by the law of the state in which that court sits. *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 664 (7th Cir.1986). This rule applies in diversity and federal question cases, unless the federal statute at issue permits nationwide service or the defendant is not subject to personal jurisdiction in any state in the United States. Fed.R.Civ.P. 4(k); *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1201–02 (7th Cir.1997).

As noted the Complaint asserts claims against Skerry under the Securities Act and the Exchange Act, both of which provide for nationwide service of process. When a statute provides for nationwide service of process, the minimum contacts necessary to satisfy constitutional due process requirements are analyzed based on the defendant's contacts with the United States, not a particular state or district. *Fitzsimmons v. Barton,* 589 F.2d 330, 332 (7th Cir. 1979). Here, the Securities Act "confers personal jurisdiction in federal court over defendants with minimum contacts with the United States, as long as the mandates of constitutional due process are met.'" *Zurich Capital Markets, Inc. v. Coglianese,* 388 F. Supp. 2d 847, 857 (N.D. Ill. 2004) (quoting *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir. 1987)) (emphasis in original) (discussing the analogous jurisdictional provision in the Securities Exchange Act); *see*

*Fitzsimmons*, 589 F.2d at 332 ("[T]he only question before us is whether the Due Process Clause imposes any restraints on this nationwide service.").

The Seventh Circuit has held that in the context of nationwide service, the fairness standard discussed in *Shaffer v. Heitner*, 433 U.S. 186 (1977), "relates to the fairness of the exercise of power by a particular sovereign, not the fairness of imposing the burdens of litigating in a distant forum." *Fitzsimmons*, 589 F.2d at 333. "Here the sovereign is the United States, and there can be no question but that the defendant, who interacted and contracted with a United States corporation, acquired a large amount of that company's stock, recommended and promoted the stock to potential investors across the United States through use of Success Holding, and then sold his stock to the public for a substantial profit without disclosing his intent to sell, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court." *Id.* Accordingly, personal jurisdiction is present over the Defendant.

## C. Venue

Finally, Skerry asserts that venue is improper in the Northern District of Indiana and the case dismissed or, alternatively, the case should be transferred to the Western District of Washington based on the doctrine of forum non conveniens.

First, there is no doubt but that venue in this district is proper pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). Section 77v and Section 78aa contain substantially similar provisions allowing "any suit or action to enforce any liability or duty … or to enjoin any violation" to be brought, "in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." Additionally, venue is proper under the

Securities Act "in the district where the offer or sale took place, if the defendant participated therein" and under the Exchange Act "in the district wherein any act or transaction constituting the violation occurred." Finally, section 28 U.S.C. §1391(b) permits venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred..."

Here, the Complaint alleges substantial acts in furtherance of the claims asserted have occurred in this District. Additionally, certain of the acts, practices and transactions and courses of business alleged in this Complaint occurred within the District, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails. *See Ritter v. Zuspan*, 451 F.Supp. 926, 930 (E.D.Mich.1978) ("Venue and jurisdiction obtain in every district where the use of the mail is of material importance to the consummation of the allegedly fraudulent scheme."). Skerry contracted with a corporation whose principal (and only) place of business is within this District. He entered into an agreement to provide investor relations services to Success Holding, acquired 360,000 shares of Success Holding stock, recommended the stock to potential investors located across the United States through emails, press releases, and other correspondence, and sold the shares publicly without disclosing his intent to sell the stock he was promoting to others. As a result, venue is present in this District.

Nevertheless, Skerry asserts that venue should be transferred to the Western District of Washington. "A federal court has discretion to dismiss a case on the ground of forum non conveniens when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping*

*Corp.*, 549 U.S. 422, 429 (2007) (internal citations omitted). As the Seventh Circuit has reminded us, a plaintiff's choice of forum should seldom be disturbed, unless the balance of convenience falls strongly in defendant's favor. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. Aug. 11, 2016) citing *Gulf Oil v. Gilbert*, 330 U.S 501, 504 (1947). A dismissal under the doctrine of *forum non conveniens* is characterized as an "exceptional one" that should be used "sparingly." *Id.* It is for this reason that defendants who invoke *forum non conveniens* bear a heavy burden, particularly when the plaintiff's choice is his home forum. *Id.* at *3. The defendant's heavy burden takes into consideration the fact that granting such a motion usually launches a plaintiff into a foreign court and the logistical hassles that come with it.

In this case, Skerry has failed to meet his heavy burden to transfer venue. As the SEC points out, this is a case involving conduct and witnesses that "span the globe" (Response, p. 13) and the SEC chose this district due to its central location amongst the multiple districts where conduct took place and witnesses reside. The primary witnesses reside in Indiana, New York, Colorado, Canada, and Asia. Likewise, the SEC is adjudicating this case from its Regional Officer in Chicago.

In contrast, Skerry does not reside in the Western District of Washington, none of the material events occurred in that district, there is no evidence he transacts business in that district and none of the material witnesses reside in that District. Rather, his only argument appears to be that Western District of Washington is more convenient for him. However, "defendants must demonstrate that a transfer will promote the administration of justice; they may not simply shift the inconvenience from one party to another." *Boyd v. Snyder,* 44 F.Supp.2d 966, 969 (N.D.Ill. 1999). Indeed, the Seventh Circuit has made it clear:

> When plaintiff and defendant are in different states there is no choice of forum that
> will avoid imposing inconvenience; and when the inconvenience of the alternative

venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff … We think this principle should hold even when one of the parties is a federal agency that will suffer inconvenience if forced to litigate in the defendant's district because the agency or its field office is in another district.

*In re National Presto Indus., Inc.,* 347 F.3d 662, 665 (7th Cir. 2003).

Skerry does assert that the SEC has an office on the West Coast which would enable the SEC to adjudicate its case in the Western District of Washington. However, the closest Regional Office to that district is in San Francisco, CA, over 800 miles from the Seattle, Washington district court that Skerry suggests. Moreover, all of the files and investigative documents are located in the Chicago Regional office and the Northern District of Indiana has an interest in adjudicating this case given Success Holding's presence within the District. Skerry has not suggested any corresponding interest that the Western District of Washington has to this case and the Court sees little to no connection with that district to warrant a transfer. Accordingly, Skerry has simply not met the burden necessary to justify a venue transfer.

## **CONCLUSION**

Based on the foregoing, Skerry's Motion to Dismiss or in the Alternative to Transfer the Case is DENIED.

Entered: This 26th day of February, 2018.

s/ William C. Lee<br>
United States District Court